# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IAN COOKE, | : | |
| Plaintiff, | : | CASE NO. 3:19-cv-65 (MPS) |
| | : | |
| v. | : | |
| | : | |
| KIM JONES, et al., | : | |
| Defendants. | : | JULY 8, 2019 |
| | : | |

_____

## RULING AND ORDER

Plaintiff Ian Cooke, currently incarcerated at the Garner Correctional Institution in Newtown, Connecticut, filed this case under 42 U.S.C. § 1983, arguing that the defendants denied him access to the courts and retaliated against him for engaging in protected speech or conduct.

On February 21, 2019, the Court filed an Initial Review Order dismissing the complaint in part. ECF No. 12. On February 27, 2019, the plaintiff filed a motion for extension of time to file a motion to amend his complaint, which the Court granted on March 15, 2019. ECF Nos. 13, 17. On March 27, 2019, the plaintiff filed a motion for reconsideration of the dismissal of some of his claims. ECF No. 18. The following day, he filed a motion for leave to file under seal an exhibit to the motion for reconsideration. ECF No. 19. On April 1, 2019, the plaintiff filed his motion to amend accompanied by a proposed amended complaint, ECF No. 23, and on April 11, 2019, sought leave to file a supplemental complaint. ECF No. 25. Also pending are the plaintiff's motion for temporary restraining order and preliminary injunction relating to the

preservation of evidence, and a motion for entry of default for failure to plead.

I.      Motions for Reconsideration and Leave to File Under Seal

Motions for reconsideration must be filed and served within seven days from the filing of the decision or order from which relief is sought.  D. Conn. L. Civ. R. 7(c)1.  The Initial Review Order was filed on February 21, 2019.  Thus, the plaintiff had until February 28, 2019 to file a motion for reconsideration.  He did not do so.  Thus, the motion for reconsideration is denied as untimely filed.

There was a delay in the plaintiff's receipt of a hard copy of the Initial Review Order.  In his motion for extension of time, ECF No. 13, dated February 26, 2019, the plaintiff stated that he had not yet received a copy of the order.  In the motion, the plaintiff sought time "to file motion(s) for leave to amend the complaint and/or to re-argue/reconsider from the court."  ECF No. 13 at 1.  The plaintiff referred to the 21-day deadline for filing a responsive pleading set forth in Federal Rule of Civil Procedure 12(a) and noted that *pro se* parties should be permitted leave to amend following issuance of an Initial Review Order.  In light of the identified time period, referenced ability to amend, and request to re-argue his claims, the Court considered the motion only as a motion for extension of time to file an amended complaint, and specifically granted only an extension of time to file an amend complaint.  ECF No. 17.

Further, reconsideration is available only if the Court overlooked facts presented in the complaint that would alter the court's decision or made an error of law.  "A motion for reconsideration 'is not a vehicle for relitigating old issues, … securing a rehearing on the merits, or otherwise taking a "second bite of the apple."'"  *Gustavia Home, LLC v. Rice*, 724 F. App'x 87, 88-89 (2d Cir. 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36,

52 (2d Cir. 2012) (citation omitted)). As the plaintiff is attempting to secure a second bite of the apple by rearguing his claims and submitting a document he had, but did not file with his complaint, the motion for reconsideration would be denied even if timely filed. The Court considers the plaintiff's arguments in conjunction with his motion to amend. As the motion for reconsideration is denied, the request to file an exhibit to that motion under seal is denied as moot.

II.     Motions to Amend

The plaintiff has filed two motions seeking permission to amend. In his first motion, the plaintiff seeks permission to file a Second Amended Complaint to reassert the claims dismissed in the Initial Review Order. In the second motion, the plaintiff seeks to supplement the complaint by adding a state law claim for breach of contract relating to the settlement of another federal lawsuit.

Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely grant leave to amend when justice so requires. A motion for leave to amend should be granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As with original complaints, the Court must review amended prisoner complaints and dismiss any portion of the amended complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. As it would be futile to permit the filing of an

3

amended complaint that fails to meet this standard, before deciding whether leave to amend should be granted, the Court will review the proposed Second Amended Complaint to ascertain whether the plaintiff alleges facts that would support a cognizable claim not included in the First Amended Complaint.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Conclusory allegations are not sufficient. *Id.* Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The named defendants in the Second Amended Complaint are: Deputy Warden of Programs and Treatment Kim Jones, Deputy Warden of Operations and interim Warden Denise Dilworth, former Commissioner of Correction Scott Semple, Assistant Attorney General Steven Strom, and current Commissioner Rollin Cook, the same defendants named in the First Amended Complaint. However, the plaintiff filed a motion to substitute current Commissioner Rollin Cook for former Commissioner Semple. As the plaintiff has named defendant Semple only in official capacity as the person able to afford him injunctive relief, the Court granted the motion. The proposed Second Amended Complaint also names former Commissioner Semple only in official capacity. In light of the prior order, former Commissioner Semple will be terminated as

4

a defendant in this action.

A.     Allegations

1.     Background

Prior to October 2016, there was a law library at Garner Correctional Institution ("Garner") that carried current Connecticut state reporters and other legal texts and treatises. All inmates at Garner had access to these materials and most volumes were available for "short-term loan." The legal volumes were in addition to numerous fiction and non-fiction books. ECF No. 23-1, ¶ 10.

The plaintiff worked as a library clerk at Garner between 2013 and 2016. In April 2016, the full-time librarian retired. The Department of Correction Unified School District #1 operated the library until September 2016. Garner administration had a correctional officer supervise the library for one additional week, then it closed. *Id.*, ¶ 11. Defendants Jones and Dilworth made plans for an alternate use of the space. The library remained closed from October 2016 through June 2017. In March 2017, two non-Department of Correction volunteers offered to supervise the library. *Id.*, ¶ 12. The space was reconfigured and reopened with a reduced collection of books. The warden retired in June 2017 and defendant Dilworth served as interim warden. *Id.*, ¶ 13.

On July 8, 2015, the state court denied the plaintiff's petition for writ of habeas corpus challenging his conviction. He was appointed a special public defender to appeal the denial. Appointed counsel "refused to file motions to perfect the appellate record and, also, refused to bring viable/valid claims." *Id.*, ¶ 14. Dissatisfied with appointed counsel's performance, the plaintiff opted to proceed *pro se* on appeal. In April 2017, the plaintiff filed a petition for writ of

mandamus seeking legal research assistance from the Office of the Chief Public Defender or the Department of Correction. Defendant Strom appeared on behalf of the Commissioner of Correction. The petition was denied. *Id.*

Connecticut state prisoners are afforded access to the courts through the Office of the Chief Public Defender for criminal matters and Inmates' Legal Aid Program ("ILAP") for civil matters relating to conditions of confinement. The Office of the Chief Public Defender provides assistance solely through appointment of counsel. ILAP provides general advice and legal assistance but does not represent inmates in court. Some correctional facilities have legal resources, but no facility has a true law library. Osborn Correctional Institution, Manson Youth Institute, and York Correctional Institution have the most extensive collections of legal resources. *Id.*, ¶ 15.

2.    Access to Courts

Between 2015 and 2016, defendants Jones, Dilworth, and Semple cut funding for Unified School District #1, including funds to hire a librarian. *Id.*, ¶ 17. In March 2017, following the decision to re-open the Garner library, defendants Jones and Dilworth ordered the destruction of the legal materials and texts. *Id.*, ¶ 18. They instructed the volunteer librarians not to retain, obtain, or lend any legal texts. *Id.*, ¶ 19.

Defendants Jones and Dilworth also have severely restricted inmate access to a typewriter. Typewriters were formerly available in the library/media center. *Id.*, ¶ 20. After April 2016, typewriters were restricted to use in the visiting area. As a result, typewriters could be used only during visiting hours while a counselor was available and for a maximum of one hour per weekday. Inmates were strip-searched after using the typewriter. *Id.*, ¶ 21. All other

6

correctional facilities have a designated typewriter in each housing unit. These typewriters may be used during recreation hours or, depending on the unit, in the cell. *Id.*

After he began representing himself in the habeas appeal, and after the Office of the Chief Public Defender denied legal assistance other than appointment of counsel, the plaintiff requested legal assistance from defendants Jones, Dilworth, and Semple, and from ILAP. The defendants stated they would provide no assistance beyond what the public defender or ILAP offered. *Id.*, ¶ 22. When the plaintiff requested access to legal research resources, the defendants stated that they do not transfer inmates among correctional facilities for access to legal resources. *Id.*, ¶ 23. The plaintiff emphasized that he was requesting legal research materials, not legal counsel or advice, and that he was not requesting a transfer because no correctional facility had a true law library. *Id.*, ¶ 24.

The plaintiff sought to assert a claim that the habeas court had misapplied the standard for ineffective assistance of trial counsel by failing to consider the cumulative effect of trial counsel's deficiencies to establish prejudice. The plaintiff was unable to present this claim because he could not research the application of "cumulative effect" in other jurisdictions. *Id.*, ¶ 25. Although the Supreme Court and all federal courts recognize that prejudice can be established by considering the cumulative effect of trial counsel's actions, the state courts have declined to adopt this standard. The plaintiff wanted to argue that this failure violated the Supremacy Clause. He contends that asserting the argument without supporting authority would have been fruitless. *Id.*, ¶ 26.

As no correctional facility library included comprehensive, up-to-date federal or out-of-state resources, the plaintiff filed a petition for writ of mandamus seeking these materials. *Id.*, ¶¶

27-28.  ILAP provided limited assistance on the right to resources for self-represented parties but would not assist the plaintiff in formulating the argument because its contract did not include "mandamus-in-aid-of-habeas" cases.  *Id.*, ¶ 29.  The state court denied the petition on procedural grounds and for failing to meet the threshold standard.  The court did not address the merits of the legal resources claim.  *Id.*, ¶ 30. The restrictions on typewriter usage prevented the plaintiff from timely typing necessary documents to obtain re-argument or a joint appeal.  He submitted a motion for extension of time nunc pro tunc, but the motion was denied.  *Id.*, ¶ 40.

During this same period, the plaintiff was attempting to respond to a motion to dismiss filed in a federal civil rights action.  *Id.*, ¶ 32.  ILAP did not provide any useful assistance.  When the plaintiff requested copies of specific cases, ILAP would take up to six weeks to respond.  As a result, any court-ordered response would be untimely.  *Id.*, ¶ 33.  Frequently, ILAP would provide general legal assistance rather than conducting research specific to an inmate's case.  *Id.*, ¶ 34.  The plaintiff settled three conditions of confinement cases to avoid retaliatory actions.  *Id.*, ¶ 35.  The plaintiff was transferred to a different correctional facility after filing the mandamus action and settled the cases in exchange for a transfer back to Garner.  ILAP and the Department of Correction did not provide assistance to ensure that the plaintiff was not taken advantage of in the settlement.  *Id.*, ¶ 36.

Through his investigation into the habeas issues, the plaintiff identified several areas of "newly discovered" exculpatory evidence.  He contends that a state forensic laboratory technician committed fraud in the alleged testing of firearms/ballistic evidence in his case and there were errors in DNA testing.  He has filed a petition for new trial under state law.  The Office of the Chief Public Defender denied appointment of counsel to assist with the petition and

ILAP told him they do not assist with criminal matters. The plaintiff is unable to litigate the petition on his own. *Id.*, ¶ 42.

3. <u>Retaliation</u>

The plaintiff complained, verbally and in writing, to defendants Jones, Dilworth, and Semple about the destruction of the legal resources at Garner. *Id.*, ¶ 45. He informed the state court in his petition for writ of mandamus that defendants Jones and Dilworth had destroyed legal materials. *Id.*, ¶ 46. The plaintiff believes that defendant Strom told defendants Jones and Dilworth about information he provided to the court. *Id.*, ¶ 47.

The plaintiff's mandamus petition was heard in a joint hearing with another inmate who had filed a similar petition. Both petitions were denied on June 26, 2017. *Id.*, ¶ 49. On July 5, 2017, four business days after the hearing on the petition for writ of mandamus, the plaintiff was transferred to MacDougall Correctional Institution ("MacDougall"). *Id.*, ¶ 48. The plaintiff believes that defendant Strom conspired with defendant Jones to effect the transfer. *Id.*, ¶ 50. As a result of the transfer, the plaintiff lost his job, programs, and cellmate. He no longer lived near his family. *Id.*, ¶ 51. At MacDougall, the plaintiff had limited access to legal storage and a typewriter. Upon arrival at MacDougall, inmates are transferred to different housing units every thirty days for up to six months, disrupting general stability. *Id.*, ¶ 52.

The transfer was effected to provide the plaintiff access to the MacDougall library, a move the plaintiff had previously rejected and which was contrary to previous statements that convenience transfers were not made. *Id.*, ¶ 53. Only the plaintiff was transferred. The other inmate who had filed a mandamus petition, but who had not complained about the destruction of legal resources, was not transferred. *Id.*, ¶ 54.

The plaintiff has twelve "banker" boxes of legal materials including files for his habeas appeal, mandamus action, and various civil cases. He feared defaulting on deadlines in those cases because he was permitted only limited legal materials in his cell. *Id.*, ¶ 55. The plaintiff settled three conditions of confinement cases. The cases were dismissed in exchange for his return to Garner. The plaintiff returned to Garner on July 28, 2017. *Id.*, ¶ 56.

The plaintiff learned that defendant Strom had been in contact with defendants Jones and Dilworth as well as the Commissioner's office during the settlement negotiations. *Id.*, ¶ 57. Although the plaintiff had no mental health treatment needs, defendants Jones and Dilworth ordered him confined in a mental health unit upon his return to Garner. *Id.*, ¶ 58. While in the mental health unit, the plaintiff was denied access to job placement and programs. He was able to use a typewriter for only one hour every two weeks. *Id.*, ¶ 59.

After returning to Garner, a security intelligence officer approached the plaintiff and asked him to become an informant. The officer stated that defendants Jones and Dilworth were punishing the plaintiff and would not release him from the mental health unit to general population unless he cooperated. The plaintiff refused to become an informant. *Id.*, ¶ 60.

The plaintiff had requested that he be paired with his former cellmate during the settlement negotiation. The plaintiff believes that AAG Strom disclosed this information to defendants Jones and Dilworth. *Id.*, ¶ 62. The security intelligence officer told the cellmate that defendants Jones and Dilworth would not return the plaintiff to general population or pair him with his former cellmate. *Id.*, ¶ 63. Shortly thereafter, the plaintiff's former cellmate received a false and exaggerated disciplinary report and was transferred to another facility. *Id.*, ¶ 61.

In September 2017, Garner staff began tampering with the plaintiff's legal mail and he

was placed on heightened security mail review for his general correspondence. This caused delays in his incoming and outgoing mail. *Id.*, ¶ 64.

In January 2018, after he and his family filed numerous complaints and grievances, the plaintiff was released from the mental health housing unit. *Id.*, ¶ 65.

B.    Analysis

The plaintiff includes four claims for relief in the Proposed Second Amended Complaint: denial of access to the courts by defendants Jones, Dilworth and Semple; denial of equal protection by defendant Semple; retaliatory transfer against defendants Jones, Dilworth and Strom; and retaliation against defendants Jones and Dilworth. Doc. No. 23-1 at 24-26.

1.    Retaliation

The plaintiff's retaliation claims are the same claims asserted in the First Amended Complaint. In the Initial Review Order, the Court determined that the retaliation claims should proceed against defendants Jones and Dilworth and be dismissed against defendant Strom. Doc. No. 12 at 12-14. The plaintiff argues that the Garner staff were not parties to the mandamus action. The respondent was the Commissioner of Correction and his allegations were general, applicable to all correctional facilities. This statement does not alter the Court's determination that the retaliation claim against AAG Strom should be dismissed. As explained in the Initial Review Order, the claim against AAG Strom is based on speculation. The plaintiff alleges no facts suggesting the AAG Strom was involved in his transfer. Thus, the plaintiff still fails to allege a plausible claim against AAG Strom.

2.    Equal Protection

The plaintiff asserts the same equal protection claim he included in the First Amended

Complaint. The Court dismissed that claim because he alleged no facts suggesting that the various correctional facilities were allocated resources based on any impermissible consideration and he alleged that all inmates in the facility were subject to the same restriction. In his Motion for Reconsideration, the plaintiff concedes that he failed to state a cognizable equal protection claim. ECF No. 18-1 at 8. Thus, as the plaintiff has alleged no facts to alter the Court's analysis, the Court will not change its determination that the plaintiff failed to state a cognizable equal protection claim.

The plaintiff argues that because adult-male high security inmates are treated differently from other groups, he has grounds to pursue a class-action lawsuit. This case, however, was not filed as a class action and, as a *pro se* litigant, the plaintiff cannot bring a class action lawsuit. *See American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (litigant generally has no standing to claim violation of rights of third parties); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (*pro se* litigant has no right to represent third parties); *Nwanze v. Philip Morris*, 100 F. Supp. 2d 215, 218 n.3 (S.D.N.Y. 2000) (acknowledging "well established federal rule forbidding *pro se* plaintiffs from conducting class action litigation"); *see also Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia,* 93 F.3d 910, 927 (D.C. Cir. 1996) ("If federal courts could find equal protection liability whenever male and female inmates have access to different sets of programs, budget-strapped prison administrators may well respond by reducing, to a constitutional minimum, the number of programs offered to all inmates.").

3.    Access to Courts

The plaintiff's new allegations relate to his access to courts claims. He contends that

defendants Jones, Dilworth, and Semple frustrated or impeded his ability to access the courts regarding non-frivolous cases relating to his conviction or conditions of confinement by impeding his ability to conduct research and to type.  Doc. #23-1, ¶ 71.  Specifically, he alleges that he was unable to present his habeas appeal argument, litigate or jointly appeal the mandamus ruling, litigate a petition for new trial based on newly discovered forensic evidence, satisfactorily settle cases, and type necessary court documents.  *Id.*, ¶ 43.

The Court set forth the standard for review of claims for denial of access to courts in the Initial Review Order.  ECF No. 12 at 8-12.  As the Court explained, it is well settled that inmates have a constitutional right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)).  That right "may not be unreasonably obstructed by the actions of prison officials."  *Baker v. Weir*, No. 3:16-cv-166(JAM), 2016 WL 7441064, at *2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)); *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) ("The constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress.") (citation and internal modifications omitted).  To state a claim for denial of access to the courts, the plaintiff must show that he suffered an actual injury as a result of the conduct of the defendants.  *Baker,* 2016 WL 7441064, at *2.  To establish an actual injury, the plaintiff must allege facts showing that the defendants took actions or were responsible for actions that "deprived him … of an opportunity to press some nonfrivolous and arguable legal claim in court."  *Brown v. Choinski*, No. 09-cv-1631(MRK), 2011 WL 1106232, at *5 (D. Conn. Mar. 23, 2011).   The Supreme Court has rejected, however, the idea that the prisoner must be afforded the means to litigate effectively once his case is filed.

*Casey,* 518 U.S. at 354.  In addition, the plaintiff must show that the defendants acted deliberately and maliciously.  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The plaintiff includes five access to courts claims in the proposed Second Amended Complaint.  The claims relate to his state post-conviction habeas appeal, his state court mandamus action, a state court petition for new trial, settlement of civil cases, and the denial of adequate access to a typewriter.  The Court rejected the claims based on the state habeas appeal and typewriter access in the Initial Review Order.

### a.  State Post-Conviction Appeal

Regarding the state post-conviction habeas appeal, the plaintiff alleges that he wanted to challenge the denial of his habeas petition on the ground that the trial court should have considered the cumulative effect of all trial counsel's errors in determining whether he met the prejudice prong of the *Strickland* standard for ineffective assistance of counsel, an approach he says has not been adopted by Connecticut courts.  Appointed counsel disagreed with the plaintiff's approach and the plaintiff decided to proceed *pro se*.

The Court found that the plaintiff failed to articulate any claim that he wanted to raise but could not because of the lack of legal research materials.  *Id.*  In his proposed Second Amended Complaint, the plaintiff alleges that he was unable to present his claim that the trial court improperly failed to consider the cumulative effect of trial counsel's errors.  However, he has attached to his motion for reconsideration a copy of the notice of appeal he filed in state court.  ECF No. 18-2 at 5-10.  The Affidavit in Support of Petition for Certification to the Appellate Court clearly sets forth the plaintiff's argument regarding the cumulative effect of trial counsel's errors.  *Id.* at 9-10.  In addition, the State Judicial Branch website indicates that the appeal

14

currently is pending. *See Cooke v. Commissioner of Corr.*, No. AC 38272,

appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=52287&Type=PartyName (last visited May

30, 2019). Because judicially noticeable court filings attached to the plaintiff's motion to

reargue show that the plaintiff is, in fact, raising the argument he contends he was precluded

from raising, he cannot satisfy the injury requirement. Leave to amend to re-assert this access to

courts claim is thus denied.

> b. <u>Typewriter Access</u>

The Court previously dismissed the plaintiff's claim regarding typewriter access because

he identified no case that he was unable to file or that was dismissed without a consideration of

the merits because he did not have sufficient typewriter access. ECF No. 12 at 11. In his

proposed Second Amended Complaint, the plaintiff alleges that the restrictions on typewriter

usage prevented timely preparation of documents to seek re-argument or an appeal of the denial

of his mandamus petition. He submitted a late motion for extension of time to submit the

documents, but the motion was denied. ECF No. 21-1, ¶ 40. The limitations on typewriter

access did not prevent the plaintiff from filing his mandamus action and he concedes that he did

not seek an extension of time to file the documents until after the deadline had passed. As the

plaintiff's inability to file the documents is attributable to his own failure to timely seek an

extension of time, the proposed Second Amended Complaint does not assert a cognizable access

to courts claim based on limited typewriter access.

> c. <u>State Mandamus Action</u>

The plaintiff next alleges that his state court mandamus action, seeking to compel provision of legal research materials, was dismissed for procedural reasons and, therefore, constitutes an actual injury under *Casey*.  This access to courts claim fails for two reasons.

First, *Casey* explains that "the injury requirement is not satisfied by just any type of frustrated legal claim."  518 U.S. at 354.  The Supreme Court restricted the applicable lawsuits to "direct appeals from the conviction for which [the inmates] were incarcerated," "habeas petitions," and "'civil rights actions'—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'"  *Id.* (citations omitted).  A petition for writ of mandamus is not an identified category of permitted cases.

Second, even if a petition for writ of mandamus were included, the plaintiff has not asserted a legally cognizable claim.  A writ of mandamus is "a drastic and extraordinary" remedy "reserved for really extraordinary causes."  *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).  Under Connecticut law, "[t]he writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy."  *Silver v. Holtman*, 149 Conn. App. 239, 264, 90 A.3d 203, 217 (2014) (internal quotation marks and citation omitted).  Research reveals no mandatory duty under state or federal law for correctional officials to provide legal research materials to Connecticut inmates.  As the subject of the plaintiff's petition does not concern a mandatory duty, he was not asserting a "nonfrivolous and arguable legal claim" and, therefore, dismissal of the suit does not constitute an actual injury.  *Brown*, 2011 WL 1106232, at *5.  *Accord Fortune v. Basemore*, No. CIV. A. 04-377, 2008 WL 4525373, at *3 n.2

16

(W.D. Pa. Sept. 29, 2008) (request that correctional officials return inmate's core legal materials "can not be the basis of any access to courts claim because there is no basis for a mandamus action as there is no mandatory duty owed to Plaintiff to be allowed to have unfettered access to all of his 'core' legal papers.").  The plaintiff cannot state a cognizable access to courts claim bases on his state court petition for writ of mandamus.

d. <u>State Petition for New Trial</u>

The plaintiff states that he filed his petition for new trial but argues that he will be unable to effectively litigate the action.  As the plaintiff has conceded in his motion for reconsideration, *Casey* does not include the right to effectively litigate an action once the action has been filed in court.  518 U.S. at 354.  As the plaintiff concedes that he was able to file his petition and alert the state court to his "newly discovered exculpatory evidence," he fails to state a cognizable access to courts claim regarding the petition for new trial.

e. <u>Settlement of Civil Cases</u>

Finally, the plaintiff contends that he was denied proper access to the courts because the defendants failed to properly advise him regarding the settlement of federal and state cases.  As the Court noted above, the right of access to courts does not include the right to litigate effectively once the case has been filed.  *Id.*  Settlement negotiations are part of effective litigation.  Thus, there is no legal basis for this claim.

The plaintiff has not asserted any new cognizable claims in the proposed Second Amended Complaint.  Accordingly, leave to amend is denied as futile.  The operative complaint will remain the First Amended Complaint with the remaining claims those identified in the Initial Review Order.

C.    <u>Motion to File Supplemental Complaint</u>

The plaintiff seeks leave to file a supplemental complaint to add a state law contract claim challenging the settlement agreement entered in *Cooke v. Deschaine*, 3:16-cv-138(SRU). The motion was filed before the defendants filed their appearance. They have not opposed the motion since appearing.

The plaintiff previously moved for relief from the settlement in that case. His motion was denied because the district court had not retained jurisdiction over the settlement. The plaintiff was advised that he could file a breach of contract action in state court or file a new action in federal court for retaliation and ask the district court to exercise supplemental jurisdiction over the settlement agreement dispute. *See Cooke v. Deschaine*, 3:16-cv-138(SRU) (D. Conn. July 31, 2017) (ECF No. 64, March 13, 2019 Ruling on Pending Motions, at 4). The remaining retaliation claims in this case relate to the incidents cited in the settlement agreement dispute.

Motions to file supplemental pleadings are governed by Rule 15(d) of the Federal Rule of Civil Procedure. Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading sought to be supplemented." The incidents underlying the plaintiff's breach of contract claim occurred in 2017, long before he filed his original complaint in 2019. Thus, his motion is not proper under Rule 15(d).

As the plaintiff is proceeding *pro se*, the Court will consider the motion as a motion to amend under Rule 15(a). A court should permit leave to amend absent undue delay, bad faith or dilatory motive by the moving party, undue prejudice to the non-moving party, or futility. *See*

18

*Foman*, 371 U.S. at 182. As noted above, the incidents supporting the plaintiff's challenge to the settlement are the same incidents underlying his retaliation claims. The plaintiff filed this motion on April 11, 2019, a month after Judge Underhill informed him of the option of filing his contract claim as a supplemental state law claim; so he was not dilatory in asserting the claim in this case. The defendants only appeared on May 20, 2019, and have not yet responded to the Amended Complaint. Thus, the Court can discern no prejudice to them by permitting the supplemental complaint. Accordingly, the plaintiff's motion is granted.

Although the plaintiff incorporates his Amended Complaint into his "Supplemental Complaint," many of the claims included in that complaint were dismissed in the Initial Review Order. Accordingly, to clarify the claims in this case, the plaintiff is directed to file a Second Amended Complaint including only the retaliation claims against defendants Jones and Dilworth and the supplemental state law breach of contract claim directed to the settlement agreement in *Cooke v. Deschaine*. The plaintiff shall file the Second Amended Complaint within twenty days from the date of this order. Failure to follow the Court's instructions in this regard may result in the Court's dismissing this action.

The defendants are directed to file their response to the Second Amended Complaint, either an answer or motion to dismiss, within fourteen days from the date the Second Amended Complaint is filed. In light of this new deadline, the plaintiff's motion for entry of default is denied as moot.

III.    Motion for Temporary Restraining Order and Preliminary Injunction

The plaintiff has filed a motion for preliminary injunctive relief seeking preservation of evidence required for his case. He states that his requests to prison officials for preservation of

the evidence have gone unanswered and that the evidence will be destroyed absent a court order.

The same standard is used to evaluate requests for temporary restraining order and preliminary injunction. *Gilmore v. Schenectady Cty. Sheriffs*, 2018 WL 794579, at *5 (N.D.N.Y. Feb. 8, 2018) (citing *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc*., 965 F.2d 1224, 1228 (2d Cir. 1992)). Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To prevail, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, ___ U.S. ___, 135 S. Ct. 2726, 2736 (2015) (internal quotation marks and citation omitted). The Second Circuit considers a showing of irreparable harm the most important requirement for an award of preliminary injunctive relief. *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

The plaintiff has filed a notice relating to his motion in which he states that correctional officials have agreed to preserve the referenced evidence, a photograph album. He has attached a copy of an inmate request confirming that the photo album is preserved as evidence. *See* ECF No. 26-1 at 1. As correctional officials have agreed to preserve the evidence, the Court concludes that the plaintiff will not suffer irreparable harm should his motion be denied. Accordingly, the motion for preliminary injunctive relief is denied as moot.

The plaintiff argues that preliminary injunctive relief still is required because the defendants might not continue to store the evidence. The plaintiff's argument is speculative. In

any event, the defendants are hereby on notice that if all or part of the evidence is not preserved, the Court may impose discovery sanctions on the defendants. Such sanctions may include adverse jury instructions or entry of judgment. *See* Fed. R. Civ. P. 37(b)(2)(A).

IV.   Conclusion

The plaintiff's motion for reconsideration [**ECF No. 18**] is **DENIED** as untimely filed. His motion for leave to file supporting exhibits under seal [**ECF No. 19**] is **DENIED** as moot.

The plaintiff's motion to amend [**ECF Nos. 23**] to restore previously dismissed claims and add other examples of denial of access to the courts is **DENIED**. The Clerk is directed to terminate former Commissioner Semple as a defendant in this case.

The plaintiff's motion to file a supplemental complaint [**ECF No. 25**] to include a state contract claim challenging the validity of the settlement agreement in *Cooke v. Deschaine* is **GRANTED.** To clarify the remaining claims in this case, the plaintiff is directed to file a Second Amended Complaint within **twenty (20) days** from the date of this order. The Second Amended Complaint shall include only the retaliation claims against defendants Jones and Dilworth and the supplemental state law breach of contract claim.

In light of the order requiring the defendants to respond to the Second Amended Complaint, the plaintiff's motion for entry of default [**ECF No. 28**] is **DENIED** as moot. The defendants are directed to file their response to the Second Amended Complaint, either an answer or motion to dismiss, within **fourteen (14) days** from the date the Second Amended Complaint is filed.

The plaintiff's motion for temporary restraining order and preliminary injunction [**ECF No. 11**] is **DENIED**. The defendants are cautioned that destruction of all or part of the evidence

sought to be preserved may result in the imposition of discovery sanctions pursuant to Fed. R.

Civ. P. 37(b)(2)(A).

      **SO ORDERED** this 8th day of July 2019 at Hartford, Connecticut.


_____/s/_____
Michael P. Shea
United States District Judge